Good morning, Your Honors. My name is Thomas Beck with the Jones Day Firm. I'm representing Citizens Telecommunications of California, the appellant here. It is a superficially appealing idea that a union as a party to the collective bargaining agreement must obviously have standing to represent retirees in a dispute about retiree benefits, even if it doesn't have the consent of those retirees. It's a party to the contract. Why would it need consent? The one circuit court that agrees with that proposition, the Canron Court in the Third Circuit, 30 years ago, that's really the conclusion they came to with very little analysis. They just looked to what they called accepted contract principles and said a party to a contract clearly has standing under that contract. The several circuit courts of appeals that have looked at the question since then, none of them have come to the same conclusion. The Fifth Circuit, Sixth Circuit, Seventh Circuit, all of them have concluded, for reasons that require a little bit more in-depth analysis, that a union is not authorized to represent retirees in matters that relate to their interests and their benefits, absent the expressed consent of those retirees. Judge Walker, in 1994, sat on a panel in the Second Circuit that did not definitively address the issue, but also opined in passing that the Second Circuit is doubtful that a union has standing to represent an individual retiree in a matter of retiree benefits with a former employer. I've got a little different situation here, because the benefits of the retirement package are not just benefits to the retirees, but they're benefits to the current membership of the union. They were bargained for by the union for their current employees as well as the retired employees, and it's part of the package. It's one of the things that an employee takes into consideration in accepting a job. And so you're saying, your position has to be, I think, that the union is here, is only the present employees have a vital interest in what their retirement will be. Walker, Your Honor, the Supreme Court has characterized the interest you just noted as speculative. But is it? I mean, why is it so speculative? Yes, Your Honor. Let me tell you why. No, it's a fixed retirement plan. Your Honor, it's not. It is a retirement plan that gets barred – it is a set of retirement benefits that get bargained – that gets bargained over and over and over again with every successive collective bargaining agreement. Right. If I, for example, am a – I'm 42 years old. If I'm a current employee of an employer and I'm represented by my union and they bargain certain retiree benefits for me, certain medical benefits, we may have 3, 4, 7, 8, 9 more collective bargaining agreements, each of which may have a different package of retiree benefits for me. It may be true, but the – when the – at the point when the company decides that it's going to abrogate these benefits, the present employees have a – have a cause for concern. Your Honor – Because these are going to be my retirement benefits. No, Your Honor, not necessarily. And the Supreme Court in Pittsburgh plate glass used the term speculative to describe exactly the notion that you're – that you're suggesting. And then the Alpha Portland case – Let me ask you this question. Let's assume that in the – at the time in question, the company, instead of abrogating all the retirement benefits, just decided to abrogate the retirement benefits in the future. But to grandfather all of the present retirees in, would the union have an obligation – would the company have an obligation to participate in an arbitration if that were occurring? If I understand your question, the answer is no. The answer is no. In other words – in other words, there would be no – no current retiree would – would contest the action, because they would not be affected. But you're saying that – that there could be no arbitration for – for the – for the present employees who's, in a month from now, would lose their retirement benefits. Well, Your Honor, those aren't – those aren't their benefits. See, here's the thing. There's a – there's a clear and distinct disconnect between – in law and in common sense between someone who's a current employee and someone who's a retiree. If I'm a current employee, my retirement benefits are – are – are inchoate. They don't really exist for me. And indeed, they may change for – for a plethora of reasons. Or, in fact, I may never, ever get them. I may get hit by a bus. I may quit. I may be fired. I may – I may go to another employer. Those retiree benefits, for me, I don't know whether I'll get them or not. One wonders why companies and – and unions bargain about benefits for retirees in a sense, because they may change over and over again. Well, why does the union – why does the union want to get a bargain for them at all, if they're always speculative? I think – I think you'd have to ask the union. Now, I can tell you – I think – I think I can tell you, Your Honor, that they – they tend to stay the same year after year after year. I mean, from – from contract to contract to contract, there is a tendency, I think, because of inertia as much as anything else, that retiree medical benefits do stay the same. But they can change. And in fact – If that's your argument, counsel, then why did you put right in your contract, any dispute arising as to whether the proposed change does or does not reduce the overall level of benefits, the dispute will be referred to expedited arbitration without exhaustion of grievance procedure. Your company agreed to go to arbitration. If there was going to be any reduction of overall level of benefits, that's what you said. Your Honor, that – Now, you can't suggest that that says, accept retirement benefits. Your Honor, we're not saying here that the union can never arbitrate a dispute about the benefits that are held by – by current retirees. We're just saying there's a plethora of reasons that – and – and three circuit courts that have looked at this have agreed with us that – Well, the difference isn't that we're not in those circuits. I understand that, Your Honor. Didn't you refuse to arbitrate at all? I'm sorry? What did you refuse to arbitrate? What we did was – and let me make clear that the record is clear on this point. There are two grievances here. There's one that relates to current employees and their benefits, and there's one that relates to retirees and only the current benefits that current retirees hold as retiree benefits. That's clear in this record. If you look at – if you look at excerpt of the record, page 43, the union's grievance is clear. They're not talking about their current members here or current employees. They're talking only when they submitted this grievance about retirees. What about the current employees that are going to retire in a week? Well, there's nothing in the record that there was any – that there were any retirees who were about to retire in a week. Well, I mean – And in any event, Your Honor – Or that – that are about to retire. I mean, people retire. Your Honor, if that's – I'm sorry to interrupt. Go ahead. If that were the case, and there's no reason to think it is the case here, perhaps the result in Schweitzer Aircraft out of the Second Circuit would – would obtain. In that case, we had a current employee who was about to retire, and the – the union submitted a grievance on behalf of that current employee while still a current employee, and that was a grievance that the employer was obliged to take to arbitration, according to the Second Circuit. And in coming to that conclusion about someone who was a current employee when the grievance was filed, they also opined, we're doubtful that the union could represent people who are already retired in terms of a dispute about their retirement benefits. Well, let me – this – this got a little confusing in the briefing to me. Is there – did the company go ahead to – to grieve the provision, its action, as it related to the current employees? Yes, Your Honor. There were – there were two grievances. Yes. One – and the union chose to articulate their grievances this way. One was – I think it was grievance 5-07, and it explicitly related to the interests of current employees. They talked in terms of employees. If you look at excerpt of the record, page 43, this is the grievance that's at issue here, 5-08. And they make it very clear that it relates only to people who are currently retired, and they're seeking retroactive relief for these retirees, and they're saying that they also want people who are already retired and did not elect medical benefits when they retired to have another bite at the apple to come get their – their medical benefits. So it's very clear that what we have in this particular case is a grievance that relates only to people who are retired when the grievance was filed and retiree benefits that obtain at the moment the grievance was filed. And when you have a case like this, the court – the Supreme Court told us in Pittsburgh plate class there are reasons that we don't – we don't combine retirees and their interests with current employees and their interests. There are conflicts. And we – And what happened to the other grievance? Is that in this case? Well, we processed the other grievance. I didn't handle that case. The grievance didn't have to do with retirement benefits. No, it did not. Other grievance did not have to do with retirement benefits, right? I don't think it did. It was the premiums. It was the premium increase on active employees. Correct. It was benefits held by active employees. And that's really the point here. Active employees – It was the premiums, the level of premium payments that the present employees had to pay. That's what – that's what was grieved. Yes. In the first one. Yes. Yes. So don't – don't try and convince us that somehow this problem that I've raised was taken care of by the first – first – by the grieved procedure. Your Honor, what I'm trying to convince you of is that the problem you've raised is not something that exists in this case. Well, my – I guess my worry is this. You enter into a contract – I'm back on contract law now. You enter into a contract. The contract says, any dispute arising under whether the proposed change does or does not reduce the overall level of benefits, the dispute will be referred to expedited arbitration. It doesn't seem to me there's any ambiguity in that agreement. Doesn't seem to me that I need to bring in any of what you say it means and what you say it doesn't mean. Seems to me you entered into this agreement. You said you'd go to expedited arbitration. Why aren't you there? Because, Your Honor, the union doesn't have the consent of the retirees. Well, but that isn't something you put in your contract. Well, Your Honor, we didn't say whether they do or do not need the consent of the retirees. You didn't say anything. So what part of your argument is it makes this contract ambiguous such that I now should even consider that idea? Your Honor, it's not – we're not arguing the contract is ambiguous. This is an arbitrable dispute. Or let me put it this way. You're asking for a term. You're asking for us to read in a new term to the arbitration agreement, that when there's a dispute over retirement benefits, the consent of the retirees is required. That's not a term that's in the arbitration. You're asking us to read it in. No, it's not, Your Honor. We didn't make it explicit in the contract. There are many things. There are many – there's a legal environment that contracting parties sometimes do not really make explicit in their contract. But that doesn't change the fact that we're not saying this is never arbitrable under any circumstances. That wasn't legal. I mean, this – you wouldn't be here if there was a – if the legal environment in the Ninth Circuit was as you – as you seem to say it is. Well, there is no legal environment in the Ninth Circuit on this case. Well, it would have been a good idea to put it in the contract. I think you're going to give us – you're going to give us the environment. I commend it. It seems to me that that is absolutely wrong. If the Ninth Circuit hasn't said something that other circuits said, that doesn't mean that it is our law that's just exactly what they said. Of course. It means that isn't the law. So I have to look at the contract. And I looked at your contract, and I tried to – I read it. And I tried to find anything in there where I could suggest that this contract would allow you for a reason outside of what's in the contract not to arbitrate. Well, Your Honor, if you wanted that, put it in. If you don't want it, then tell me that it's ambiguous so you can give me some reasoning. Otherwise, I enforce the contract in front of me, the old district judge. Your Honor, that's – and that's why I opened by acknowledging there is a superficially appealing idea here that a party to a contract gets to enforce the provisions of that contract. Here, though, there's a little bit more nuance that I think – It's superficial. It may be superficial to you, but it is contract. Your Honor, as someone who's been practicing labor law for a while now, I can tell you that what appears to be a matter of intuition and a matter of simple contract law often is not when we get into labor management relations. And that is the case here. And that's why – Give me the case in my circuit or something in the Supreme Court that says I ought to get into this contract, interpret into it situations that aren't here, and therefore allow you not to arbitrate. Your Honor, I can – I can tell you that what we have is we have – the principal case that will help you here that you really need to pay attention to because it's a Supreme Court case. I read that one. It's the Pittsburgh Plague Case, Your Honor. And it points out – I read that one. And for – But it doesn't say anything about the contract itself. That's correct. But let me point out that what we're not doing here is we're really not interpreting this contract. We're answering the question about whether the union has standing to represent these employees without their consent and whether it's a good idea to let them do so given their conflict of interest or at least potential conflict of interest, which several cases have outlined, between a union representing current voting dues-paying employees and a union who's seeking to represent the interests of non-voting, non-dues-paying employees. Where's the conflict? I'm sorry? Where is the conflict? The conflict? If the union – if the union wins, there's no conflict. The employees get what, you know, they get benefits. And if the union loses, the employees can then bring their individual suits and try and win. Your Honor, that's not necessarily the case. Why not? The courts have said – the courts have seemed to say we're not sure what happens here. Some courts have said that if the union is permitted to arbitrate without the unions – excuse me, without the retirees' involvement, that will not bind the retirees. Right. Other courts, like Rosetto in the Seventh Circuit, have said if the union – if the union arbitrates, that will bind the employees. No, because you've made the point very clearly here that these union – the union doesn't represent nonmembers. Well, nonetheless, some courts have concluded that if the union arbitrates a provision of its – like the Rosetto Court, Your Honor, in the Seventh Circuit, some courts have concluded, without a great deal of explanation, frankly, that if – Right. Right. Very little explanation. That if we – that if we let this union arbitrate – And no – no understanding of – of exclusion. Well, let me – let me – let me please point out one other thing that may happen, Your Honor, and this goes to the conflict between the union representing current employees and the union trying to represent retirees. In the Jansen v. Greyhound case in the Northern District of Iowa 20 years ago, we had for – for changed medical benefits, and this happened after the union had taken it upon itself to unilaterally arbitrate the same changes with the employer. And the court there, in the Jansen v. Greyhound case, that court decided we are not going to bind these retirees to the outcome of this arbitration decision because they had no involvement, not even any knowledge or chance to participate. Why should they be – why should they be bound? And here's what happened. The union – the union agreed in the context of that arbitration proceeding unilaterally to reduce the retiree benefits. They agreed with the employer. And so this illustrates the conflict that can happen with a union trying to represent its current employees and whatever their interests may be while litigating about the interests of retirees. And – and it makes perfect sense that the Jansen court did not bind the retirees because the union neglected them. The union did not fairly – did not fairly represent them when it was trying to represent their interests. I'd like to reserve my remaining almost four minutes for rebuttal, if I may. You may. Gruff, on behalf of IBW 1245, the appellee in this matter. There's nothing superficial about this case. The facts are that the contract very clearly provides that if there is a change in benefits that in any way reduces the overall level of benefits, the matter shall be submitted to expedited arbitration. There's nothing ambiguous about that. As the – as Your Honors have already reviewed, the fact of the matter is they have a clear right, the union has a clear right to submit this matter to expedited arbitration. I will point out to you that the union, first of all, has a right to arbitrate and grieve any violations of the contract. Second of all, as is the case in this matter, this is an ongoing contract. As we sit here today, the contract has not yet expired. The union clearly has a right to pursue this grievance with respect to its active members who will retire in the future or who have retired since this grievance was initially initiated or the process to proceed to arbitration was initially initiated. There's no dispute that they have that right. What is the relevance of the grievance with respect to the premiums that went forward? Well, the – as pointed out by Mr. Beck, he didn't quite indicate what the grievance says. If you look at the excerpt of page 43, the difference between the grievances is active benefits versus retiree benefits. It's not active versus retirees. It's active benefits, which is the grievance that's not the subject matter of this case. What is the subject matter of this case is a grievance regarding retiree benefits and retiree premiums, which affects both current retirees at the time and future retirees during the term of the contract. So to say that the – that this is about only about retirees and current retirees at the time the grievance was initiated is not correct. The fact of the matter is there have been people who have retired since the grievance was initiated, and there may be until the end of this contract later this year. The union clearly has a right to proceed with this grievance. In fact, not only does it have a right, it has a duty to proceed with the grievance on behalf of its members. And to say that they don't have that right otherwise is not appropriate. In the cases that have been alluded to by counsel for appellant with respect to other circuits, if you look closely at those cases, they all had situations which are – or the majority of them had situations which were different than the case at hand, in that, in many of those cases, the union involved didn't have individual standing to pursue the cases. One involved an expired collective bargaining agreement. One involved retiree benefits that predated the collective bargaining agreement. None of the cases that's cited from the circuits are like this case here today. They didn't involve future retirees and current employees. Correct. At least they – those cases, Rosetta and the second case, Cleveland Electric. Certainly, the analysis did not focus on future retirees. They talked about present retirees. Right. In those cases, that's – Correct. It does seem to be that they weren't directly on point. Correct. And they also didn't – and like I said, they didn't have individual standing. The union clearly has individual standing to pursue this grievance. It's a violation of the contract, one. Two, they have active members who are affected by the outcome of that violation. And therefore, they have not only, as I said, not only a right, but a duty to proceed with that grievance. Just one second if you may, Your Honor. I think it's really important to consider the fact that 100 – as found in the record, 125 of the active employees, there were 191, were already eligible for benefits, for retiree benefits. In other words, they'd reached the requirements. They're still working, but they reached the requirements for – They could retire. They could retire. So a significant portion of the people of active members in fact – Is that in the record? I'm sorry? Is that in the record? Yes. Okay. Where? Where do I find that? You will find that in the declaration of Ray Thomas in support of the most of the petitions for – to compel arbitration, and you also find it in the separate excerpts that we submitted, pages 79 to 80. Thank you. You're welcome. So clearly the majority of the active members that are at issue at the time of the grievance, this is a very pertinent issue to them. And furthermore, the case that's been referenced by counsel for appellants, Pittsburgh, Clayton, Glass, clearly finds that bargain-for benefits for active members, in other words, bargain-for retiree benefits, are mandatory subject to bargaining and therefore have a clear basis for pursuit by the union. The union has an interest in protecting those rights. Those are benefits that were bargained for and the members depend upon for the future. Okay. Now, if you lose the arbitration, I'm just trying to see how this works out. If you lose the arbitration, then what is the effect on those who are already retired? If we lose the arbitration? Yes. Yes. The benefits remain at the level that the company has changed them to. But wouldn't they have the opportunity to press their claims? Because you're not representing the current retirees. Would they have individual suits? I believe they would have the right to pursue them separately, yes. And if you win the arbitration, then? Issue preclusion against the company. The company, and they would get the benefits back. Correct. But that's, as we stated in our brief, that's something of the appellant's own making. They bargain for that benefit. Yes. They created that situation by bargaining for it, and they have to live with it. But separate and apart from the retiree's rights, both under 301, under Section 301 or under ERISA, the union has a right to enforce its contract and should be able to. And in this case, not only is it subject to arbitration, but it's subject to expedited arbitration by agreement of the parties, and it should have moved forward. I think the key that needs to be considered here is these facts. The union has a right to grieve its contract. The union has a right to represent its active members with respect to any future retiree benefits. They don't need consent. There's no requirement of consent. As noted by Justice Smith, there is nothing in the contract that suggests, even suggests, that they should have to obtain retiree consent. They have a right to go forward with a grievance, and they should be allowed to go forward with that grievance. And as the district court pointed out and cited two Ninth Circuit cases, the Ninth Circuit has long held that the unions have an undeniable interest in protecting the benefits and the bargains made in their contracts. And for that reason, this case should be affirmed. And if you have any questions, I'd be glad to other questions, I'd be glad to answer. Thank you. I'll be very brief. I'd like to just very briefly address one concern of the panel about whether the present employees have an interest in the retiree benefits. And I've mentioned the Pittsburgh plate class is, I think, a case that answers that. And the same rationale as to why benefits for current retirees are not a mandatory subject of bargaining, that illustrates the disconnect between current, the interests of current employees and the interests of retirees and the current benefits. And the Alpha Portland Court followed up on this out of the Eighth Circuit. And they said the notion that current employees, I'm paraphrasing, the notion that current employees have an interest in the current benefits of current retirees is speculative. And like the Pittsburgh plate class Supreme Court decision, they used that term speculative. And they said it's because, quote, present employees would have no assurances that they were advancing their own interests by advancing pensioners' interests. And that, I think, that court was correct. It illustrates that there's a disconnect. And benefits, as they may appear right now, retiree benefits as they may appear right now. And as I, as a current employee, may think I have, they can change essentially at any time. And I may or may not ever be entitled to them at some undefined point in the future. I have a little bit of worry about how you're defining what Pittsburgh plate class says. Because on page 180 of that opinion, it says, the retirement, future retirement benefits of active workers are part and parcel of their overall compensation. They can, and that's why they can bargain. They may bargain for those. Right. But then the Court goes on at 180, at pages 181 and 182, Your Honor, to use this term speculative. Well, I understand. But that is to suggest that in some, I mean, my worry is when I read Pittsburgh plate class, I don't think it says that in every instance, in every situation that I have in front of me, that it is speculative for one to bargain about his retirement benefits. That's what you suggest it says, but I don't think it really says that. Well, Your Honor, I think they're saying it's speculative, and that's why we're going to make, that's why we're going to make current retiree benefits a subject that may be bargained, it may permissively be bargained, but it's not going to be a mandatory subject of bargaining. And what the Court went on to say is the effect that the board, meaning the NLRB, the effect that the board asserts bargaining on behalf of pensioners would have on the negotiation of active employees' retirement plans is too speculative a foundation on which to base an obligation to bargain. So what current benefits for current retirees are to you. But, however, that's the obligation to bargain. Now we've got it bargained. It's in the contract. And the question is quite a different one. But what we have now, Your Honor, are the facts that a union does not have a duty of fair representation to retirees. I've mentioned how in the Janssen case that manifested itself as giving short shrift to the retirees. And we also have the uncertainty about are the retirees going to be bound by the outcome of the union's unilateral actions on their behalf, or are they not going to be? With respect to the idea that the unions are going to be bound by the outcome of the union, I mean, you could have covered this completely in your agreement, in the collective bargaining agreement. You could have required consent. Well, Your Honor, I suppose that's true. The other side of that coin is the union could have said we know that the majority of Federal courts of appeals require consent to bargain about retirees' benefits, and so we want to put in a provision that consent is not necessary. I'm not sure that would work because I'm not sure either way our contract can trump what the actual law is. Well, but the bottom line is, and that was my first question, the bottom line is not what trumps what, but if one wants the opportunity to fail to arbitrate, it seems as if one should either put it in a straightforward, unambiguous contract that in those instances they're not going to, or they ought to come up with some ambiguity in there that allows them to argue for some outside the contract situation. That's what I wanted you to respond to. Judge Schroder, I'm over time. May I just go ahead and respond to that question? Well, you can do it if you could do it briefly. I think you've been trying. I have. Your Honor, this to try to answer that, Your Honor, I really don't see this, and I don't think the Court needs to see it as a question of contract interpretation. We said going into this case this is a substantively arbitral provision, which means really it's potentially arbitrable. The union will have, will be able to arbitrate this, and we won't object anymore if they just go get the consents and they ameliorate these problems that we have, the pernicious consequences of the fact that they do not have a duty of fair representation to the retirees who they're seeking to represent, and the fact that none of us seem to know, the Court seems split on the question of how will them, how will the union unilaterally acting to protect retirees' interests, how will that ultimately affect them, will it or won't it? Thank you for your time and your attention. The case just argued is submitted for decision. We'll hear the next case, which is Cabusa-Suarez v. Mukasey. Thank you.
judges: Schroeder, Smith, Walker